

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bascom Giles
Commissioner General Land Office
Austin, Texas

Dear Mr. Giles:

> Opinion No. O-1172
> Re: Power and authority of the
> Board for Lease of Texas
> Prison land to enter into
> a contract granting to a
> person or corporation the
> right to prospect and ex-
> plore for oil and gas by
> seismograph, gravity meter
> or other similar methods
> upon Texas Prison Land.

In your letter of July 21, 1939, you requested the opinion of this department upon the above stated question. Your letter reads as follows:

"Will you please furnish us with an opinion on the question as to whether or not the Board for Lease of Prison Lands is authorized to enter into a contract whereby a person or corporation is granted the right to prospect and explore for oil and gas by seismograph, gravity meter or other methods similar, upon prison lands."

It is a well settled rule that public officers and governmental boards possess only such powers as are expressly conferred upon them by law or are necessarily implied from the powers so conferred. 34 Texas Juris. 440; Harlingen Independent School Dist. v. C. H. Page & Bro., 48 S. W. (2) 983.

Honorable Bascom Giles, Page 2

Ch. 13, Page 16, Acts of 1930, 31st Legislature, 4th Called Session, Vernon's Annotated Civil Statutes, Article 6203a, creates the Board for Lease of Texas Prison Lands. Such statute defines the powers and duties of the Board and further provides the machinery and procedure for the carrying out of the powers and duties granted to the Board.

Section 1 of such Act creates the Board for Lease of Texas Prison Lands.

Section 2 of the Act reads as follows:

"All lands or any parcel of same now owned, or that may be owned and held by the State as State prison lands may be leased by the Board to any person, or persons, firms, or corporation, subject to and as provided for in this Act for the purpose of prospecting, or exploring for and mining, producing, storing, caring for, transporting, preserving, and disposing of the oil and/or gas therein belonging to the State."

Section 3 provides as follows:

"The Board is hereby authorized to cause the State Prison Lands to be surveyed and subdivided into such lots or blocks as will be conducive or convenient to facilitate the advantageous sale of oil and/or gas leases thereon, and identify such lots and blocks by permanent markings on the ground, and to make such maps and plats as may be thought necessary to carry out the purposes of this Act." * * *

Section 4 of the Act, in part, provides as follows:

"Wherever, in the opinion of the Board there shall be such a demand for the purchase of oil and/or gas leases on any lot or tract of land as will reasonably insure an advantageous sale, the Board shall place such oil and gas in said land on the market in such blocks or lots as the Board may designate. * * *"

Honorable Bascom Giles, Page 3

In Section 5 of the Act, the following provision is found:

"* * *No bid shall be accepted which offers a royalty of less than one-eighth of the gross production of oil and/or gas in the land bid upon, and this minimum royalty may be increased at the discretion of the Board, all members concurring, before the promulgation of the advertisement of the land. Every bid shall carry the obligation to pay an amount not less than One Dollar per acre for delay in drilling, such amount to be fixed by the Board in advance of the advertisement, and which shall be paid every year for five years, unless in the meantime production in paying quantities is had upon the land."

Sections 6 to 14, inclusive, make various provisions relative to payments which shall accompany bids, the acceptance or rejection of bids by the Board, the term of the lease and the delay rentals to be paid, the life of the lease after production, the assignment of rights under an oil and gas lease, the requirement as to royalty payments and for the filing of sworn statements as to production by the lessee, the obligation of the lessee to protect the land from drainage by adjacent leases, the grounds for forfeiture of the lease, and for the filing of certain records by the lessee in the General Land Office.

If Section 2 of the Act were construed alone, without reference to the remaining provisions of the Act, there would be found in the language of such section some justification for a holding that the Board is empowered to make a contract of the character inquired about by you. However, it is a cardinal rule of statutory construction that the various sections and provisions of a statute must be construed as a whole, and that all its parts be harmonized, if possible, so as to give effect to the entire Act according to the evident intention of the Legislature. 39 Tex. Jur. 229; Magnolia Petroleum Co. v. Walker, 83 S. W. (2) 929.

Honorable Bascom Giles, Page 4

When we examine the provisions of the Act in Sections following Section 2 thereof, we find that the Legislature repeatedly refers to and makes provisions for the "sale of oil and gas leases" upon Texas Prison lands. The Act further sets forth a detailed procedure governing the advertisement for bids to purchase oil and gas leases upon such land, for the awarding of such oil and gas leases to the highest bidder, and for the provisions to be inserted in such leases with respect to the payment of royalty, bonus and delay rentals as a consideration for such leases.

Nowhere other than in Section 2 of the Act is there any language used by the Legislature which, in our opinion, will permit a reasonable inference that the Legislature intended to invest the Board for Lease of Texas Prison land with power or authority to make a contract which grants only the naked right and privilege of entering on Texas prison land and prospecting and exploring for oil and gas thereon by seismographic or other similar methods, with no provision that the State shall receive the oil and gas royalties, the bonus and the delay rentals which are expressly provided for in Article 6023a.

It is apparent from reading the Act as a whole that the Legislature in passing such Act intended to authorize and empower the Board for Lease of Texas Prison Lands to sell oil and gas leases covering such lands, under the procedure detailed in the Act, and with the royalty, bonus and delay rentals provision as expressly provided for in the Act.

It is, of course, true that the grant of such an oil and gas lease as authorized in the Act in question will carry with it the right on the part of the lessee to prospect upon the land covered by his lease by seismographic and other methods in use in the oil business provided such methods do not injure or damage the land covered by the leases. However, viewing the statute as a whole, we are unable to find therein any authority or power vested in the Board to grant a permit to any person or corporation to prospect and explore Texas prison lands by seismographic

Honorable Bascom Giles, Page 5

or other methods independently of an oil and gas lease thereon.

Accordingly, you are advised that, in our opinion, the Board for Lease of Texas Prison lands has no power or authority to grant a permit of the character referred to in your letter.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *[signature]*
Robert E. Kepke
Assistant

RKK:BT

APPROVED
OPINION
COMMITTEE
BY *[signature]*
CHAIRMAN

APPROVED SEP 15, 1939
*[signature: Grace E. Mann]*
ATTORNEY GENERAL OF TEXAS